UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAVID JUDD,

        Defendant.

_____/

Case: 2:21-cr-20600
Judge: Parker, Linda V.
MJ: Stafford, Elizabeth A.
Filed: 09-16-2021 At 12:38 PM
INDI USA VS JUDD (DP)

VIO:  18 U.S.C. § 1347
       18 U.S.C. § 2
       18 U.S.C. § 982

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

    1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were age 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. The benefits available under Medicare were governed by federal statutes and regulations. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.  Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.  Specifically, Part B covered medically necessary outpatient individual and group psychotherapy.

5.  CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for provider services, including psychotherapy. Wisconsin Physicians Service ("WPS") was the CMS contracted carrier for Medicare Part B in the state of Michigan. AdvanceMed was the Zone Program Integrity Contractor ("ZPIC") in the state of Michigan for Medicare from May 2015 until January 2020, at which time Coventbridge (USA) Inc. assumed the role. The ZPIC was the contractor charged with investigating fraud, waste and abuse.

6.  Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to seek reimbursement for services

provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had provided the services.

7. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8. Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9. Providers were allowed to submit claims to Medicare for services that they provided and that were medically necessary.

10. Medicare only covered services that were both medically necessary and provided as represented.

11. An electronic funds transfer, or EFT, was the electronic message used by health plans to order a financial institution to electronically transfer funds to a

provider's account to pay for health care services. An EFT included information such as: amount being paid, name and identification of the payer and payee, bank accounts of the payer and payee, routing numbers, and date of payment.

12. Medicare Part B regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of beneficiaries receiving services, as well as records documenting actual treatment of beneficiaries to whom services were provided and for whom claims for payment were submitted by the physician. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider under the Part B program.

13. Local Coverage Determinations (LCDs), as defined by the Social Security Act, were decisions made by a Medicare Administrative Contractor (MAC) on whether a particular service or item was reasonable and necessary, and therefore covered by Medicare within the specific region that the MAC oversaw. LCDs 34616 and 30489 were titled "Psychiatry and Psychological Services" and applied to the primary geographical jurisdiction of Michigan. These LCDs specified that Medicare coverage of psychotherapy did not include teaching grooming skills, monitoring activities of daily living (ADL), recreational therapy (dance, art, play), or social interaction. It also did not include oversight activities

4

such as house or financial management. LCD A54829, entitled "Clinical Social Worker Services," stated that services furnished as an "incident to" CSW personal professional services were not covered.

14. Under Medicare Part B, outpatient individual psychotherapy, and outpatient group psychotherapy, were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Providers were required to: (1) document the medical necessity of these services; (2) document the date the service was performed; (3) identify the provider who performed the service; and (4) identify the clinic, physician office, or group practice where the provider provided the service. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers. To be reimbursed from Medicare for outpatient individual psychotherapy and outpatient group psychotherapy, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

15. Medicare permitted the following health care providers to bill for mental health services, including group and individual psychotherapy: qualified physicians; clinical psychologists; clinical social workers (CSWs); nurse practitioners; clinical nurse specialists; and physician assistants.

16. To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

17. Life Transition Services, LLC ("Life Transition"), was a Michigan limited liability company, formed in or around August 2013, and located at 43171 Dalcoma Drive, Suite 7, Clinton Township, Michigan 48028. Life Transition was enrolled as a participating provider with Medicare.

18. Defendant DAVID JUDD, a resident of Saint Clair Shores, Michigan, was the registered owner of Life Transition and was the sole signatory on the bank account into which Medicare reimbursements to Life Transition were deposited.

## COUNTS 1 - 4
### (18 U.S.C. §§ 1347 and 2 - Health Care Fraud)

19. Paragraphs 1 through 18 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

20. From in or around January 2015, and continuing through in or around September 2021, the exact dates being unknown to the Grand Jury, in Wayne and Macomb Counties, in the Eastern District of Michigan, and elsewhere, the defendant, DAVID JUDD, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and

attempt to execute, a scheme and artifice to defraud Medicare, a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, that is, by submitting or causing the submission of false and fraudulent claims to Medicare for psychotherapy services that were not medically necessary, were not provided as billed, or were not provided at all.

## PURPOSE OF SCHEME AND ARTIFICE

21. It was a purpose of the scheme and artifice for DAVID JUDD to unlawfully enrich himself and others by, among others things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for purported psychotherapy services that were not provided or were otherwise not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant.

## THE SCHEME AND ARTIFICE

22. On or about January 20, 2015, DAVID JUDD certified to Medicare that Life Transition would comply with all Medicare rules and regulations, including that Life Transition would not knowingly present or cause to be presented, a false and fraudulent claim for payment by Medicare.

7

23. Thereafter, DAVID JUDD devised and engaged in a scheme to submit claims to Medicare for: (a) psychotherapy services that were not provided; and (b) psychotherapy services that were not eligible for reimbursement from Medicare.

24. DAVID JUDD caused Life Transition to submit false and fraudulent claims to Medicare requesting reimbursement for psychotherapy and other services purportedly provided to beneficiaries who, in fact, never received these services from DAVID JUDD or any other Life Transition employee.

25. DAVID JUDD caused Life Transition to submit false and fraudulent claims to Medicare requesting reimbursement for psychotherapy sessions purportedly provided to beneficiaries who were non-verbal, mentally altered, or otherwise unable to participate in psychotherapy. These services were not medically necessary and not eligible for reimbursement from Medicare.

26. DAVID JUDD caused Life Transition to submit false and fraudulent claims to Medicare for psychotherapy services that were performed by individuals not eligible to provide such services to beneficiaries and not eligible for reimbursement from Medicare.

27. DAVID JUDD caused Life Transition to submit false and fraudulent claims to Medicare for psychotherapy and other services that were purportedly performed by individuals other than indicated on such claims, and, as such, were not eligible for reimbursement from Medicare.

28. From in or around January 2015, through in or around September 2021, DAVID JUDD submitted and caused the submission of approximately $1,967,655.43 in false or fraudulent claims to Medicare on behalf of Life Transition.

## EXECUTIONS OF THE SCHEME AND ARTIFICE

29. On or about the dates specified below, in the Eastern District of Michigan, and elsewhere, DAVID JUDD, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted and caused to be submitted the following false and fraudulent claims to Medicare for psychotherapy services that were not provided and that were ineligible for reimbursement, in an attempt to execute, and in execution of, the scheme as described in paragraphs 22-28, with each execution set forth below forming a separate count:

| | | | | | |
|---|---|---|---|---|---|
| | S.O. | 2/22/2018 | 9/26/2018 | CPT 90833 Individual Psychotherapy and CPT 99213 E&M | $180 |
| | G.M. | 2/28/2018 | 1/10/2019 | CPT 90837 Individual Psychotherapy | $175 |
| | S.O. | 6/23/2018 | 9/26/2018 | CPT 90834 Individual Psychotherapy | $135 |
| | G.M. | 11/10/2018 | 11/21/2018 | CPT 90834 Individual Psychotherapy | $135 |

9

Each in violation of 18 U.S.C. §§ 1347 and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(7)—
Criminal Forfeiture)

30. The allegations contained in this Indictment above are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(c) together with 28 U.S.C. § 2461(c).

31. Pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(c) together with 28 U.S.C. § 2461(c), upon being convicted of the crimes charged in Counts 1 through 4 of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense(s). Such property includes, but is not limited to:

    a. Approximately $641,725.60 seized from Huntington Bank account number xxxxxx1812 held in the name of Life Transition Services, LLC.

32. <u>Money Judgment</u>: Such property includes, but is not limited to, a forfeiture money judgment against DAVID JUDD in an amount to be determined, representing the total value of all property subject to forfeiture as a result of his

10

violation(s) of 18 U.S.C. § 1347, as alleged in Counts 1 through 4 of this Indictment.

33. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a. Cannot be located upon the exercise of due diligence;
      b. Has been transferred or sold to, or deposited with, a third party;
      c. Has been placed beyond the jurisdiction of the Court;
      d. Has been substantially diminished in value; or
      e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

                                        THIS IS A TRUE BILL.

                                          s/Grand Jury Foreperson
                                          Grand Jury Foreperson

SAIMA S. MOHSIN
Acting United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

s/Regina R. McCullough
REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/Kathleen C. Cooperstein
KATHLEEN C. COOPERSTEIN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 957-2958
Email: Kathleen.Cooperstein@usdoj.gov

s/Steven R. Scott
STEVEN R. SCOTT
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 262-6763
Email: Steven.Scott@usdoj.gov

Date:  September 16, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Companion Case Information**                    Companion Case Number: 20-cr-20453

This may be a companion case based upon LCrR 57.10 (b)(4)[1]:    Judge Assigned: Hon. Terrence Berg

☑ Yes    ☒ No    AUSA's Initials: KC

**Case Title:** USA v. DAVID JUDD

**County where offense occurred:** Wayne County and Macomb County

**Check One:**    ☒ Felony    ☐ Misdemeanor    ☐ Petty

✓ Indictment/___Information --- **no** prior complaint.
___Indictment/___Information --- based upon prior complaint [Case number:                    ]
___Indictment/___Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

**Defendant name**              **Charges**              **Prior Complaint (if applicable)**

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 16, 2021
Date

*[signature]*
Kathleen C. Cooperstein, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202)-957-2958
Fax:    (313) 226-0816
E-Mail address: Kathleen.Cooperstein@usdoj.gov
Attorney Bar #: VA 84262

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.