UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Criminal No. 21-CR-20600

DAVID JUDD,

    Defendant.

## UNITED STATES' MEMORANDUM FILED IN AID OF SENTENCING

Defendant David Judd ("Defendant" or "Judd"), a licensed nurse practitioner, owned and managed Life Transition Services LLC ("LTS"), a company providing psychiatric and psychotherapy services to patients, many of whom were insured by Medicare. Judd pleaded guilty to one count of health care fraud as a result of causing the submission of claims for reimbursement to Medicare that were ineligible for reimbursement because they were not provided as described, were provided by ineligible individuals, and/or were not medically unnecessary.

Judd achieved a college and graduate school education and a career in a stable profession with many employment opportunities, yet instead of practicing legitimately, he chose to defraud critically important government assistance

programs upon which hundreds of millions of elderly, disabled, and low-income Americans rely to address their health care needs. The seriousness of the crime, the critical importance of deterrence, and the need for appropriate punishment demand that a custodial sentence be imposed.

Accordingly, the United States requests that the Court: (1) impose a custodial sentence within the guidelines range of 30 months; (2) impose a special assessment of $100; (3) impose a three-year term of supervised release; and (4) order Judd to pay restitution in the amount of $605,701.30, owed to the United States Department of Health and Human Services.

## BACKGROUND

**A.     The Fraud Scheme**

Between approximately January 2015 and September 2021, in Wayne County in the Eastern District of Michigan, and elsewhere, Judd did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare. Medicare is a "health care benefit program" of the United States as defined in 18 U.S.C. § 24(b). Furthermore, Medicare is a health care benefit program affecting commerce. Specifically, Judd caused the submission of false and fraudulent claims to Medicare for psychotherapy services that were not medically necessary, not rendered, and/or not eligible for Medicare reimbursement.

From in or around January 2015 through in or around September 2021, Judd owned Life Transition Services LLC ("LTS"), where he worked in a managerial and supervisory role. At Judd's direction, LTS submitted claims to Medicare for psychiatric and psychotherapy services purportedly provided to Medicare beneficiaries.

Judd was a licensed nurse practitioner in the state of Michigan and was eligible to provide billable individual and group psychotherapy to Medicare beneficiaries under Current Procedural Terminology ("CPT") codes 90833, 90834, and 90837. Judd retained and supervised several unlicensed social workers who were ineligible to provide billable psychotherapy to Medicare beneficiaries under these CPT codes.

From approximately February 28, 2018, through approximately September 1, 2021, Judd knowingly caused Medicare to be billed for psychotherapy services that he and others did not provide to LTS patients. On February 28, 2018, Judd caused Medicare to be billed approximately $175 for psychotherapy services purportedly rendered on behalf of Medicare beneficiary S.O., even though he did not provide those services.

Judd also caused the submission of claims to Medicare for psychiatric and psychotherapy services that were ineligible for reimbursement and for claims that were billed at a higher-level CPT code than warranted. Judd neither supervised nor

3

participated in the patient care provided by unlicensed social workers at LTS, yet Judd and others disguised the claims he submitted to Medicare for these services to appear as if he or another qualified practitioner had provided the services. These billings were fraudulent because they were not provided as described, were provided by ineligible individuals, and/or they were not medically unnecessary.

In total, Judd submitted, and caused to be submitted, approximately $1,248,519.94 in false and fraudulent claims to Medicare, resulting in payment of approximately $605,701.30 by Medicare as a result of Judd's fraudulent acts.

**B.     Procedural History**

On September 16, 2021, Judd was charged by Indictment with four counts of health care fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2. ECF No. 1. On May 11, 2023, Judd pleaded guilty to Count Two, which charged him with one count of health care fraud in violation of 18 U.S.C. § 1347. ECF Nos. 44-45. On December 19, 2023, the Court entered a Stipulated Preliminary Order of Forfeiture. ECF No. 50.

## GUIDELINES CALCULATION

In the Rule 11 plea agreement, the parties recommended an offense level of 24, a three-level reduction for acceptance of responsibility, and a criminal history category I, ECF No. 44, which equates to a guidelines range of 37 to 46 months. In the Defendant's Presentence Investigation Report ("PSR"), the Probation

4

Department also calculated a Guidelines range of 37 to 46 months, based upon an offense level of 21 and a criminal history category I. PSR ¶¶ 21-31, 56.

Under the recently effective amendments to the Sentencing Guidelines, Judd is entitled to a two-level reduction from the guidelines range as an offender who presents zero criminal history points (PSR, ¶33) and is not subject to any of the ten exclusionary criteria listed in the new § 4C1.1. *See* U.S.S.G § 4C1.1. Accordingly, the Plea Agreement's offense level of 21 should be adjusted downward to 19, with a resulting guidelines range of 30 - 37 months.

**Sentencing Factors**

Title 18, United States Code, Section 3553(a) provides numerous factors that the Court is to consider in sentencing Judd. Factors pertinent to the instant offense are discussed below, numbered as they are in Section 3553(a).

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant.**

Circumstances of the Offense

Judd, as the owner and manager at LTS, played a vital role in enabling and perpetrating the fraud conspiracy. Judd caused to be submitted billing for patients he had not treated. In addition, Judd hired and managed the unlicensed social workers who performed services for which LTS billed improperly. Moreover, Judd neither supervised nor participated in the patient care he delegated to these unlicensed social workers. Medicare trusts that providers, like the owners of

5

psychotherapy practices, will submit claims only for services that are provided as billed. Judd abused this trust by causing the submission of fraudulent billing. Judd's criminal activity was not an isolated mistake; rather, he perpetrated this scheme for years, and his misconduct resulted in an intended loss to Medicare of over $1.2 million.

The offense involved defrauding critical public and private health care programs. Hundreds of millions of Americans, including the most vulnerable and dependent members of our society, rely upon Medicare and Medicaid for their health care needs. The integrity and solvency of these programs is essential to protect the health and wellbeing of millions of Americans.

Characteristics of the Defendant

Judd has a high school, multiple college, and graduate degree. PSR, ¶ 48. His partner, with whom he has been in a lengthy relationship and lives, is retired from Beaumont Hospital. *Id.*, ¶ 40. Judd receives Social Security income, has saved hundreds of thousands of dollars, and lives with his partner, who owns the home in which they live and pays the majority of the expenses. *Id.*, ¶¶ 54. With this kind of education, resources, and financial security, Judd had every opportunity to earn a legitimate living; however, he instead chose to cut corners and engage in a years-long fraud scheme.

6

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with appropriate education, vocational training, or medical care.**

The Defendant's punishment should reflect not only the scope and seriousness of his criminal conduct, but also the need to deter both him and other future criminals from stealing from the Medicare and Medicaid programs.

Government health care is a lifeline to millions of elderly, disabled, and low-income beneficiaries. Health care fraud is a substantial problem nationwide and has been the subject of sustained public discussion and debate. The National Health Care Anti-Fraud Association, an organization composed of both public and private health insurers and regulators, conservatively estimates that three percent of all health care spending in the United States is lost due to fraud.[1]

As this Court knows, health care fraud is especially pervasive in the Eastern District of Michigan. Since Medicare Fraud Strike Force operations began in 2009, hundreds of individuals have been indicted in the Eastern District of Michigan in connection with Medicare, Medicaid, and private payor fraud schemes, placing this District among the nation's leaders in the number of health care fraud indictments

---

[1] *See* https://www.nhcaa.org/tools-insights/about-health-care-fraud/the-challenge-of-health-care-fraud/ (last visited October 1, 2024).

7

returned within that time. The indictments involve well over $1 billion in fraudulent billings to federal health care programs and private insurers.

By billing Medicare for psychotherapy services that were not actually provided, or not provided as billed, Judd contributed to and worsened the health care fraud infecting this district. His conduct also made it harder for legitimate behavioral health practices to contract with Medicare and provide services to those in need.

Judd's punishment should reflect not only the scope and seriousness of his own criminal conduct, but also the need to deter others from engaging in these types of schemes. The Sixth Circuit Court of Appeals has emphasized that "economic and fraud-based crimes . . . are prime candidates for general deterrence" because these crimes "are more rational, cool, and calculated than sudden crimes of passion or opportunity." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).

Every dollar that Judd helped divert from these insurance programs for his own benefit is a dollar that could and should have been used to provide valuable services to Medicare beneficiaries.

**(3) The kinds of sentences available**

Under 18 U.S.C. § 1347, the maximum sentence is ten years' imprisonment. The maximum fine is $250,000 or twice the pecuniary gain or loss from the instant offense.

8

**(4) The sentencing range established by the U.S.S.G.**

The parties agreed to the following provisions regarding the sentencing guidelines range that is reflected in the Plea Agreement. *See* ECF No. 44. In addition, as discussed above, following the entry of the Plea Agreement and the finalization of the PSR, amendments to the Sentencing Guidelines became effective which provide for a further two-level reduction.

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount > $550,000: | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| Federal Health Care Offense with Loss Amount > $1,000,000 | +2 | [U.S.S.G. § 2B1.1(b)(7)] |
| Abuse of Trust Position | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1(b)] |
| Zero Point Offender | -2 | [U.S.S.G. § 4C1.1] |

Judd's adjusted offense level is 19, with a resulting guidelines range of 30 to 37 months.

**(5) Any pertinent policy statement issued by the United States Sentencing Commission ("U.S.S.C.")**

While there is no specific Sentencing Commission policy statement addressing health care fraud, the Patient Protection and Affordable Care Act ("PPACA"), enacted in March 2010, provides the most recent evidence of congressional intent regarding health care fraud offenses. The PPACA specifically

9

provides for increased sentences for health care fraud offenses and further requires the Sentencing Commission to ensure that the Federal Sentencing Guidelines and policy statements: (i) reflect the serious harms associated with health care fraud and the need for aggressive and appropriate law enforcement action to prevent such fraud; and (ii) provide increased penalties for persons convicted of health care fraud offenses in appropriate circumstances.  Pub. L. No. 111-148, § 10606(a)(3).

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records**

This sentencing factor is intended to address national sentencing disparities, and it is widely recognized that a Guidelines sentence is the best way to avoid such disparities.  *See United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices"); *Rita v. United States*, 551 U.S. 338 (2007).  Judd's Guidelines range takes into account the specific characteristics of his offense and imposing a Guidelines sentence is the best way to avoid unwarranted sentencing disparities with similarly situated defendants nationwide.

## CONCLUSION

Accordingly, the United States requests that the Court: (1) impose a custodial sentence within the middle of the guidelines range of 30 months; (2) impose a special

assessment of $100; (3) impose a three-year term of supervised release; and (4) order the Defendant to pay restitution in the amount of $605,701.30, with all of it owed to the United States Department of Health and Human Services.

Dated: October 10, 2024

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Kelly M. Warner*
KELLY M. WARNER
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20005
Phone: (202) 603-3180
Email: kelly.warner@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel for Defendant.

                                              *s/Kelly M. Warner*
                                              KELLY M. WARNER
                                              U.S. Department of Justice
                                              Criminal Division, Fraud Section
                                              1400 New York Ave., N.W.
                                              Washington, D.C. 20005
                                              Phone: (202) 603-3180
                                              Email: kelly.warner@usdoj.gov